﻿Citation Nr: AXXXXXXXX
Decision Date: 12/31/20 Archive Date: 12/31/20

DOCKET NO. 200115-53975
DATE: December 31, 2020

ORDER

Entitlement to a disability rating of 70 percent for posttraumatic stress disorder (PTSD) is granted on and after November 19, 2018, subject to the laws and regulations governing the payment of monetary benefits. 

Entitlement to a disability rating in excess of 10 percent for left knee degenerative arthritis status post arthroscopic surgery is denied.

Entitlement to a disability rating in excess of 10 percent for right knee strain with patellofemoral pain syndrome and patellar tendinitis is denied.

REMANDED

Service connection for hypertension is remanded.

Service connection for sleep apnea is remanded.

Service connection for erectile dysfunction is remanded.

FINDINGS OF FACT

1. Throughout the period on appeal, the Veteran’s PTSD has been manifested by occupational and social impairment with deficiencies in most areas, but not total occupational and social impairment. 

2. For the period on appeal, the Veteran’s left knee degenerative arthritis status post arthroscopic surgery has manifested as painful motion, but not ankylosis, recurrent subluxation or lateral instability, limitation of flexion to 30 degrees, limitation of extension to 10 degrees, dislocated semilunar cartilage, removed semilunar cartilage with symptoms not already rated, or impairment of the tibia or fibula. 

3. For the period on appeal, the Veteran’s right knee strain with patellofemoral pain syndrome and patellar tendinitis has manifested as painful motion, but not ankylosis, recurrent subluxation or lateral instability, limitation of flexion to 30 degrees, limitation of extension to 10 degrees, dislocated or removed semilunar cartilage, or impairment of the tibia or fibula. 

CONCLUSIONS OF LAW

1. With resolution of reasonable doubt in the Veteran’s favor, on and after November 19, 2018, the criteria for a disability rating of 70 percent, but no higher, for PTSD have been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.1-4.14, 4.21, 4.126, 4.130, Diagnostic Code 9411 (2019).

2. For the period on appeal, the criteria for a disability rating in excess of 10 percent for left knee degenerative arthritis status post arthroscopic surgery have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1-4.14, 4.21, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5003-5260 (2019). 

3. For the period on appeal, the criteria for a disability rating in excess of 10 percent for right knee strain with patellofemoral pain syndrome and patellar tendinitis have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1-4.14, 4.21, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5260. 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the Army from September 1978 to April 1985. In August 2019, the Veteran submitted a VA Form 20-0996, Decision Review Request: Higher-Level Review (HLR), and requested review of a July 2019 rating decision. In September 2019, the Agency of Original Jurisdiction (AOJ) issued the HLR decision on appeal, which considered the evidence of record at the time of the initial rating decision. 

In the January 2020 VA Form 10182, Decision Review Request: Board Appeal, the Veteran elected the Direct Review docket. Therefore, the Board may only consider the evidence of record at the time of the July 17, 2019 rating decision. 38 C.F.R. § 20.301 (2019).

Evidence was added to the claims file during a period of time when new evidence was not allowed. As the Board is deciding the PTSD and knee claims, it may not consider this evidence in its decision with regard to those claims. 38 C.F.R. § 20.300 (2019). The Veteran may file a Supplemental Claim and submit or identify this evidence. 38 C.F.R. § 3.2501 (2019). If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision. 

As the Board is remanding the hypertension, sleep apnea, and erectile dysfunction claims for further development, this additional evidence will be considered by the AOJ in the adjudication of those claims.

Neither the Veteran nor his representative have raised any issues with the duty to notify or duty to assist prior to the rating decision on appeal. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that “the Board’s obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board.”); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).

Increased Ratings

Disability ratings are determined by applying a schedule of ratings that is based on average impairment of earning capacity. Separate Diagnostic Codes identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R. Part 4 (2019). Each disability must be viewed in relation to its history and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1. 

“Staged” ratings are appropriate for an increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007). When entitlement to compensation has already been established and an increased rating is at issue, the relevant temporal focus for adjudicating an increased rating claim is on the evidence concerning the state of the disability from the time period one year before the claim was filed until July 17, 2019.  Hart, 21 Vet. App. at 509; see also 38 U.S.C. § 5110(b)(3) (2012); 38 C.F.R. § 3.400(o)(2) (2019). VA received notice of the Veteran’s intent to file a claim on November 19, 2018.

Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7. 

1. PTSD

The Veteran contends that his PTSD warrants a higher rating than that currently assigned. It is currently rated under 38 C.F.R. § 4.130, Diagnostic Code 9411, for PTSD, with a 30 percent rating on and after August 13, 2015. As stated above, VA received notice of the Veteran’s intent to file a claim on November 19, 2018. 

Under 38 C.F.R. § 4.130, psychiatric impairment is rated under the General Rating Formula for Mental Disorders. 38 C.F.R. § 4.130 provides that a 30 percent evaluation is warranted for occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as depressed mood; anxiety; suspiciousness; panic attacks (weekly or less often); chronic sleep impairment; and mild memory loss (such as forgetting names, directions, recent events). 38 C.F.R. § 4.130.

A 50 percent rating is warranted for occupational and social impairment with reduced reliability and productivity due to such symptoms as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbance of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. Id.

A 70 percent evaluation is warranted for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful situations (including work or a worklike setting); and inability to establish and maintain effective relationships. Id. 

A 100 percent rating is in order when there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of close relatives, occupation, or own name. Id. 

When evaluating a mental disorder, VA must consider the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the claimant’s capacity for adjustment during periods of remission. See Vazquez–Claudio v. Shinseki, 713 F.3d 112 (Fed. Cir. 2013). VA shall assign an evaluation based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner’s assessment of the level of disability at the moment of the examination. 38 C.F.R. § 4.126 (a). When evaluating the level of disability from a mental disorder, VA will consider the extent of social impairment, but shall not assign an evaluation solely on the basis of social impairment. 38 C.F.R. § 4.126 (b).

The Veteran has submitted a January 2019 statement by his spouse, who reported that she had been married to him for twenty-three years and that, throughout their marriage, she had observed him having nightmares, night sweats, and sometimes waking up in a panic. She also reported that he was very easily agitated by others and always had to face the door when going out to eat. 

The Veteran has also submitted a January 2019 examination report by his private treating psychiatrist, who diagnosed severe chronic PTSD. The Veteran’s spouse reported “severe anxiety and depressive symptoms including anger management, irritability, lashing out at people and an unbearable situation at home and in the community.” The psychiatrist also noted that the Veteran “got into angry arguments” with his spouse during the examination. 

The Veteran reported crying for no reason at times and being awakened from deep sleep four to five times a week by reliving traumatic incidents, including shouting, sweating, and falling onto the floor. He also reported frequent daytime flashbacks, as well as panic attacks when seeing reminders of military service such as convoys. He reported that he associated with very few people, trusted no one other than his spouse, and that other family and friends meant nothing to him. He also reported that he stopped going to church to avoid the public. He also reported persistent negative emotional states and his spouse reported that he was unable to experience positive emotions. 

The Veteran also reported that, when going out, he looked for the entrance and exit of any place. He also reported anger episodes, blanking out, and what the psychiatrist characterized as “episodes of recklessness and self-destructive behavior when he gets mad and takes his vehicle and goes off driving fast.” He also reported problems with attention, concentration, memory, and organization. He reported that he had been working at the same steel plant for the past eighteen years but had problems at work with supervisors and coworkers. He also reported that his hygiene was deteriorating and his spouse had to remind him to attend to it. He denied that he was suicidal or homicidal. 

On examination, he was disheveled, paranoid, cold, distant, and hypervigilant, his vocabulary and articulation were normal, his thought process was disorganized, he sweated heavily when discussing traumatic events, his mood appeared anxious, irritable, and angry, his affect was of increased intensity but appropriate to thought content, he denied hallucinations but was very mistrustful, and his insight and judgment were limited. The psychiatrist found that the Veteran was “severely incapacitated by panic attacks two to three times a week, emotional instability, impairment of short and long term memory, disturbances of motivation and mood, and difficulty in establishing and maintaining effective work and social relationships. The psychiatrist opined that the Veteran’s PTSD symptoms caused 90 percent social and occupational impairment.

The Veteran was afforded a VA examination in February 2019, by a psychologist. The psychologist diagnosed PTSD. The Veteran reported that he was married, had two children and two step-children, and had an “excellent” relationship with them. He also reported attending church and associating with some people from church. He also reported that he had been employed by the same steel company for 18 years. He also reported that he had thoughts “of wanting to hurt some people but [he] wouldn’t do it.” The examiner listed the Veteran’s symptoms for rating purposes as depressed mood, anxiety, and chronic sleep impairment. 

The Veteran’s grooming and hygiene were appropriate, his affect and mood were appropriate to the situation, his thought processes were logical, he was oriented in all spheres, and he denied suicidal ideations or intentions. The examiner characterized the Veteran’s overall level of occupational and social impairment as an occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, which is consistent with a 30 percent rating. 

Based on the evidence described above, the Board finds that, affording the Veteran the benefit of the doubt, his psychiatric symptoms and overall disability picture warrant an evaluation of 70 percent for PTSD throughout the period on appeal. During that period, the record contains evidence of unprovoked irritability with periods of violence and neglect of personal appearance and hygiene. The Veteran’s private treatment provider has also characterized the overall severity of his symptoms as severe. For these reasons, the Board finds that Veteran’s symptoms most nearly approximate those that warrant a 70 percent rating throughout the period on appeal. 38 C.F.R. §§ 4.7, 4.130, Diagnostic Code 9411. 

The Board does not, however, find the criteria for a 100 percent evaluation are more nearly approximated by the Veteran’s symptoms at any point during the period on appeal. The record does not contain evidence of any of the symptoms listed in the criteria for a 100 percent rating or symptoms similar to those listed in the 100 percent rating criteria, with the possible exception of danger of harm to himself or others. Self-harm is contemplated by the 100 percent criteria. Bankhead v. Shulkin, 29 Vet. App. 10 (2017). However, the record does not show that the Veteran’s reckless behavior, which his treatment provider characterized as episodic, is of the severity needed to accurately describe a “persistent” danger to himself or others. Even the constant presence of some symptoms listed in the criteria for a 100 percent rating would be insufficient because the overall guiding criterion for a 100 percent rating is that both total occupational and total social impairment be present. 38 C.F.R. § 4.130; see, e.g., Vazquez-Claudio v. Shinseki, 713 F.3d 112, 117 (Fed. Cir. 2013). 

In this case, the Veteran’s symptoms have not been shown to be so severe that he has both total occupational and total social impairment. “Total” is defined as “whole, not divided; full; complete,” and “utter, absolute.” Black’s Law Dictionary, 1498 (7th ed. 1999). The Veteran has reported full-time employment for the entire period on appeal. He has therefore not demonstrated total occupational impairment resulting from his service-connected psychiatric disability. 

In addition, total social impairment is not shown. The Veteran has been able to maintain some personal relationships, specifically with his spouse, children, and stepchildren. The Board acknowledges that these relationships are sometimes strained or distant, but that is reflected in the current 70 percent rating for “deficiencies in most areas,” the criteria for which include inability to establish and maintain effective relationships and difficulty in adapting to stressful circumstances including work or a worklike setting. Because the Veteran is not totally socially or occupationally impaired, a 100 percent rating is not warranted. 

The Board also notes that many of the Veteran’s reported symptoms throughout the period on appeal are included among those specifically contemplated in the General Rating Formula for Mental Disorders, pursuant to which a 70 percent disability rating has been assigned. See 38 C.F.R. § 4.130. Importantly, the Board notes that symptoms noted in the rating schedule are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular disability rating. See Mauerhan v. Principi, 16 Vet. App. 436 (2002). In other words, symptoms comparable to those listed in the General Rating Formula could be considered in evaluating the Veteran’s extent of occupational and social impairment. 

Accordingly, the existence and severity of the Veteran’s psychiatric symptoms are adequately contemplated by the 70 percent rating criteria. As noted above, many of the symptoms are specifically listed in the General Rating Formula for Mental Disorders, and the others are common psychiatric symptoms that-while not specifically listed-are comparable indicators of the type of occupational and social impairment contemplated in the Rating Formula.

The Board has also considered the Veteran’s assertions and those of his spouse regarding his psychiatric symptoms, which they are competent to provide. See Layno v. Brown, 6 Vet. App. 465, 470 (1994). The lay evidence is also credible. The symptoms described in those lay statements comport with the 70 percent rating that has now been assigned. However, these lay statements do not provide any basis upon which to assign a higher rating because they do not reflect total social or occupational impairment. In sum, the Board finds that, resolving reasonable doubt in the Veteran’s favor, his impairment due to PTSD has been most consistent with a 70 percent disability rating throughout the period on appeal. 

2. Left Knee Degenerative Arthritis Status Post Arthroscopic Surgery

3. Right Knee Strain with Patellofemoral Pain Syndrome and Patellar Tendinitis

The Veteran contends that his left knee degenerative arthritis status post arthroscopic surgery and right knee strain with patellofemoral pain syndrome and patellar tendinitis warrant higher ratings than those currently assigned. The left knee is currently rated under 38 C.F.R. § 4.71a, Diagnostic Codes 5003-5260, with a 10 percent rating from August 13, 2015 to March 18, 2018, a 100 percent rating from March 19, 2018 to April 30, 2018, and a 10 percent rating on and after May 1, 2018. 

Hyphenated Diagnostic Codes are used when a rating under one Diagnostic Code requires use of an additional Diagnostic Code to identify the basis for the evaluation assigned; the additional code is shown after the hyphen. 38 C.F.R. § 4.27 (2019). Diagnostic Code 5003 pertains to degenerative arthritis and Diagnostic Code 5260 pertains to limitation of leg flexion. The right knee is currently rated under 38 C.F.R. § 4.71a, Diagnostic Code 5260, with a 10 percent rating on and after August 13, 2015. As stated above, VA received notice of the Veteran’s intent to file a claim on November 19, 2018. 

Diagnostic Code 5003 provides, when limitation of motion is noncompensable under the appropriate Diagnostic Code, for a 10 percent rating for each major joint or group of minor joints affected by limitation of motion. 38 C.F.R. § 4.71a, Diagnostic Code 5003. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. Id. For rating purposes, the knee is considered a major joint. 38 C.F.R. § 4.45. As the Veteran’s disability rating is already based on painful motion throughout the period on appeal, further discussion of Diagnostic Code 5003 is not warranted. 

In determining the appropriate rating for musculoskeletal disabilities, particular attention is focused on functional loss of use of the affected part. Factors of joint disability include increased or limited motion, weakened movement, excess fatigability, incoordination, and painful movement, including during flare-ups and after repeated use. DeLuca v. Brown, 8 Vet. App. 202, 206-08 (1995); 38 C.F.R. § 4.45. A finding of functional loss due to pain must be supported by adequate pathology and evidenced by the visible behavior of the claimant. 38 C.F.R. § 4.40. Nonetheless, even when the background factors listed in § 4.40 or 4.45 are relevant when evaluating a disability, the rating is assigned based on the extent to which motion is limited, pursuant to 38 C.F.R. § 4.71a; a separate or higher rating under § 4.40 or 4.45 itself is not appropriate. See Thompson v. McDonald, 815 F.3d 781, 785 (Fed. Cir. 2016) (“[I]t is clear that the guidance of § 4.40 is intended to be used in understanding the nature of the veteran’s disability, after which a rating is determined based on the § 4.71a criteria.”).

Additionally, “pain itself does not rise to the level of functional loss as contemplated by the VA regulations applicable to the musculoskeletal system.” Mitchell v. Shinseki, 25 Vet. App. 32, 38 (2011). Pain in a particular joint may result in functional loss, but only if it limits the ability to perform the normal working movements of the body with normal excursion, strength, speed, coordination, or endurance. Id.; 38 C.F.R. § 4.40. Under 38 C.F.R. § 4.59, painful joints are entitled to at least the minimum compensable rating for the joint. 

Limitation of flexion of the leg is evaluated as follows: flexion limited to 15 degrees (30 percent); flexion limited to 30 degrees (20 percent); flexion limited to 45 degrees (10 percent); and flexion limited to 60 degrees (noncompensable). 38 C.F.R. § 4.71a, Diagnostic Code 5260. 

Limitation of extension of the leg is evaluated as follows: extension limited to 45 degrees (50 percent); extension limited to 30 degrees (40 percent); extension limited to 20 degrees (30 percent); extension limited to 15 degrees (20 percent); extension limited to 10 degrees (10 percent); and extension limited to 5 degrees (noncompensable). 38 C.F.R. § 4.71a, Diagnostic Code 5261 (2019). 

For VA purposes, a normal range of knee motion is from 0 degrees of extension to 140 degrees of flexion. 38 C.F.R. § 4.71, Plate II.

There are additional Diagnostic Codes that apply to knee disorders. 38 C.F.R. § 4.45(f) (2019). 38 C.F.R. § 4.71a, Diagnostic Code 5256 (2019) pertains to ankylosis of the knee and is not for application in this case because the Veteran does not have ankylosis. 

38 C.F.R. § 4.71a, Diagnostic Code 5257 (2019) pertains to recurrent subluxation or lateral instability of the knee and provides for rating as follows: severe (30 percent); moderate (20 percent); and slight (10 percent). 

Meniscal conditions are evaluated as follows: dislocated semilunar cartilage with frequent episodes of “locking,” pain, and effusion into the joint (20 percent); and symptomatic removal of semilunar cartilage (10 percent). 38 C.F.R. § 4.71a, Diagnostic Codes 5258 and 5259 (2019). 

Impairment of the tibia and fibula is evaluated as follows: nonunion with loose motion, requiring a brace (40 percent); malunion with marked knee or ankle disability (30 percent); malunion with moderate knee or ankle disability (20 percent); and malunion with slight knee or ankle disability (10 percent). 38 C.F.R. § 4.71a, Diagnostic Code 5262 (2019).

The Veteran underwent left knee arthroscopic surgery with a partial meniscectomy in March 2018. 

The Veteran was afforded a VA examination in June 2019. With regard to both knees, the Veteran reported constant throbbing pain and decreased range of motion. He reported flare ups in both knees of increased pain and inability to bear weight approximately every two to three months, lasting two to three days at a time, but reported that he had not had a major one since prior to his March 2018 surgery. He reported functional impairment in the form of inability to fully bend his knees or stand or walk for extended periods of time. He also reported inability to lift heavy weight or to run. 

On examination, range of right and left knee motion was reported as 0 degrees of extension to 130 degrees of flexion. The range of motion did not itself contribute to functional loss. There was pain on flexion and extension and it caused functional loss. There was moderate achy pain on palpation above the right patella and on the lateral aspect of the left patella, as well as bilateral pain with weight bearing and crepitus. There was no additional loss of motion on repetition. The examiner noted no significant limits to functional ability due to pain, fatigue, and weakness with repetition over time or due to flare ups, but noted the Veteran’s reports of inability to fully bend his knee, lift anything heavy, or run during flare ups. There was no functional impairment due to DeLuca factors. There was no objective evidence of pain on passive range of motion testing for either knee. 

There was no muscle atrophy, but there was a reduction in muscle strength to active movement against some resistance. There was no ankylosis. Joint stability testing was normal and there was no history of recurrent patellar subluxation or dislocation, lateral instability, or recurrent effusion. There was no tibial or fibular impairment. There was no history of meniscal conditions in the right knee. The only residual of the Veteran’s left partial meniscectomy was frequent episodes of joint pain. The Veteran reported regularly using a knee brace for stability. The examiner found that the Veteran’s bilateral knee disabilities had caused him to miss less than one week of work time in the last twelve months and that they would have an impact on his ability to work in the form of inability to participate in employment requiring heavy lifting or prolonged standing or running. 

The preponderance of the evidence described above shows that the Veteran’s service-connected knee disabilities do not warrant ratings in excess of 10 percent under Diagnostic Code 5260 for each knee during the period on appeal. No examiner or treatment provider has found that the Veteran’s left or right leg flexion has been limited to less than 130 degrees during the period on appeal. A 20 percent rating under Diagnostic Code 5260 requires limitation to 30 degrees. 

In addition, no examiner or treatment provider has found that the Veteran’s left or right leg extension has been limited to less than full extension. Therefore, a separate rating under Diagnostic Code 5261 is not warranted, as the criteria for even a noncompensable rating require extension to be limited to 5 degrees. The preponderance of the evidence also shows that the Veteran’s left and right knee disabilities have not been manifested by ankylosis, recurrent subluxation or lateral instability, or impairment of the tibia or fibula and that his right knee disability has not been manifested by meniscal dislocation or removal. 

The Board acknowledges the Veteran’s left knee partial meniscectomy and frequent episodes of joint pain, but there is nothing in the record to indicate that the meniscus is dislocated or that there is locking or effusion. A 20 percent rating under Diagnostic Code 5258 requires dislocation and frequent episodes of locking, pain, and effusion. A separate rating under Diagnostic Code 5258 is therefore not warranted. 

The record does show a partial meniscectomy with residual symptoms, which warrants a 10 percent rating under Diagnostic Code 5259. “The evaluation of the same disability under various diagnoses is to be avoided.” 38 C.F.R. § 4.14 (2019). However, the United States Court of Appeals for Veterans Claims has concluded that evaluation of a knee disability for limitation of motion does not, as a matter of law, preclude separate evaluation of a meniscal disability of the same knee under Diagnostic Code 5259; the question is whether the symptoms of the Veteran’s knee disability have already been compensated under other Diagnostic Codes such that separate evaluation under Diagnostic Code 5259 is not warranted. Lyles v. Shulkin, 29 Vet. App. 107, 116 (2017). The only left knee partial meniscectomy residual identified during the June 2019 VA examination was frequent episodes of joint pain. The Veteran’s rating under Diagnostic Code 5260 is based on painful motion of the knee joint. The record does not show that the Veteran has additional pain originating from parts of his knee other than the joint. The Board therefore finds that there are no residual symptoms of the Veteran’s meniscectomy that have not already been compensated under other Diagnostic Codes and that a separate rating under Diagnostic Code 5259 is not warranted in this case. 

The Board has considered the Veteran’s lay statements. The Veteran is competent to report his own observations with regard to the symptoms of his knee disabilities and his descriptions are credible. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). However, his statements regarding the functional impact of his knee disabilities, including during flare ups or with repetition over time, do not establish that his symptoms meet the criteria for a 20 percent rating or higher during those periods. The Board acknowledges the Veteran’s reports of limitation of function during flare ups. The June 2019 VA examiner, after considering the Veteran’s statements, found no significant additional functional limitation during those periods. In addition, because the Veteran reported flare ups only every two to three months for two to three days at a time, there is nothing in the record to indicate that the Veteran’s descriptions of his flare ups consistently represent the predominant state of his functional impairment during the period on appeal. Therefore, nothing in the Veteran’s statements is inconsistent with the 10 percent ratings currently assigned. 

In addition, the Board considered whether a higher rating is warranted under the regulations relating to additional functional loss due to pain, weakness, fatigability, incoordination, and other factors under DeLuca, 8 Vet. App. at 204-07; 38 C.F.R. §§ 4.40, 4.45. Given the Board’s findings above regarding the impact of flare ups and repetition over time, there is nothing to indicate that the Veteran’s pain causes functional impairment equivalent to the criteria for a rating in excess of 10 percent in either knee under the Diagnostic Codes based on limitation of motion of the knee. 

Because the Board considered the applicable ratings under every Diagnostic Code pertaining to musculoskeletal disabilities of the knee, the Board finds that there are no other potentially applicable Diagnostic Codes by which a higher rating can be assigned.

REASONS FOR REMAND

1. Service connection for hypertension is remanded.

Once VA undertakes the effort to provide an examination when developing a service connection claim, even if not statutorily obligated to do so, it must provide one that is adequate for purposes of the determination being made. Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). The Veteran was afforded a VA examination in June 2019. The clinician opined that it was less likely than not that the Veteran’s hypertension was proximately due to or the result of his service-connected PTSD, but did not opine as to whether hypertension had been aggravated by PTSD. In addition, despite the fact that the clinician found that the Veteran’s “records do show hypertension during his time in service,” the clinician did not provide an opinion with regard to direct service connection. Because this duty to assist error occurred prior to the July 2019 rating decision, a remand is warranted to obtain an additional medical opinion.

In addition, the Veteran has submitted a February 2019 medical opinion by his private treating physician that is favorable to his claim, but this opinion contains no rationale. Because “most of the probative value of a medical opinion comes from its reasoning,” this conclusory opinion is insufficient for VA adjudication purposes. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). 

2. Service connection for sleep apnea is remanded.

The Veteran was afforded a VA examination in April 2019. The clinician opined that it was less likely than not that the Veteran’s sleep apnea was proximately due to or the result of his service-connected PTSD, but did not opine as to whether sleep apnea had been aggravated by PTSD. Because this duty to assist error occurred prior to the July 2019 rating decision, a remand is warranted to obtain an additional medical opinion.

In addition, the Veteran has submitted a February 2019 medical opinion by his private treating physician that is favorable to his claim, but this opinion contains no rationale. Because “most of the probative value of a medical opinion comes from its reasoning,” this conclusory opinion is insufficient for VA adjudication purposes. Nieves-Rodriguez, 22 Vet. App. at 304. 

3. Service connection for erectile dysfunction is remanded.

VA must provide an examination with regard to a claim for disability compensation when there is competent evidence of a disability that may be associated with an in-service disease, injury or event, but there is insufficient information to make a decision on the claim. See McClendon v. Nicholson, 20 Vet. App. 79 (2006). In a May 2019 statement, the Veteran reported erectile dysfunction and ascribed it to a “lack of concentration” due to his PTSD symptoms. The threshold for determining whether the evidence “indicates” that there “may” be a nexus between a current disability and an in-service event, injury, or disease is a low one. Id., at 83. This evidence meets that threshold, and an examination is necessary. Because this duty to assist error occurred prior to the July 2019 rating decision, a remand is warranted to obtain a VA examination.

The matters are REMANDED for the following action:

1. Arrange for an opinion by an appropriate clinician for the purpose of determining the etiology of the Veteran’s hypertension. The entire claims file and a copy of this remand must be made available to the clinician for review. A new physical or telehealth examination is only required if deemed necessary by the clinician. 

The clinician must provide opinions as to the following:

a. Whether it is as likely as not (a probability of 50 percent or greater) that any current hypertension had its origin in service or is related to the Veteran’s active service, or whether it began within one year of separation from service. 

b. Whether it is as least as likely as not that any current hypertension was caused by the Veteran’s service-connected PTSD.

c. Whether it is as least as likely as not that any current hypertension was aggravated beyond its natural progression by the Veteran’s service-connected PTSD.

Although an independent review of the claims file is required, the Board calls the clinician’s attention to the following:

a. An April 1984 service treatment record noting blood pressure of 140/100 and a May 1984 service treatment record noting blood pressure of 140/90.

b. A February 2019 medical opinion by the Veteran’s private treating physician that it is as likely as not that the Veteran’s PTSD contributes to or aggravates his hypertension. 

c. A 2014 article submitted by the Veteran in February 2019 regarding the relationship between mood and anxiety disorders and hypertension.

d. The June 2019 VA examination report, including the finding that the Veteran’s “records do show hypertension during his time in service.”

The rationale for any opinion expressed should be provided. Note that the fact that a disability is not mentioned or diagnosed in treatment records cannot serve as the sole basis for a negative finding. If an opinion cannot be made without resort to speculation, the clinician should so state and provide reasoning as to why this is so. 

2. Arrange for an opinion by an appropriate clinician for the purpose of determining the etiology of the Veteran’s sleep apnea. The entire claims file and a copy of this remand must be made available to the clinician for review. A new physical or telehealth examination is only required if deemed necessary by the clinician. 

The clinician must provide opinions as to the following:

a. Whether it is as likely as not (a probability of 50 percent or greater) that any current sleep apnea had its origin in service or is related to the Veteran’s active service. 

b. Whether it is as least as likely as not that any current sleep apnea was caused by the Veteran’s service-connected PTSD.

c. Whether it is as least as likely as not that any current sleep apnea was aggravated beyond its natural progression by the Veteran’s service-connected PTSD.

Although an independent review of the claims file is required, the Board calls the clinician’s attention to the following:

a. A February 2019 medical opinion by the Veteran’s private treating physician that it is as likely as not that the Veteran’s PTSD contributes to or aggravates his sleep apnea. 

b. A 2005 article submitted by the Veteran in March 2019 regarding the relationship between psychiatric disorders and sleep apnea.

The rationale for any opinion expressed should be provided. Note that the fact that a disability is not mentioned or diagnosed in treatment records cannot serve as the sole basis for a negative finding. If an opinion cannot be made without resort to speculation, the clinician should so state and provide reasoning as to why this is so. 

3. Schedule the Veteran for a physical or telehealth examination with an appropriate clinician for his erectile dysfunction. The entire claims file and a copy of this remand must be made available to the clinician for review.

The clinician must provide opinions as to the following:

a. Whether it is as likely as not (a probability of 50 percent or greater) that any current erectile dysfunction had its origin in service or is related to the Veteran’s active service. 

b. Whether it is as least as likely as not that any current erectile dysfunction was caused by the Veteran’s service-connected PTSD.

c. Whether it is as least as likely as not that any current erectile dysfunction was aggravated beyond its natural progression by the Veteran’s service-connected PTSD.

Although an independent review of the claims file is required, the Board calls the clinician’s attention to the Veteran’s May 2019 statement regarding his symptoms.

The rationale for any opinion expressed should be provided. Note that the fact that a disability is not mentioned or diagnosed in treatment records cannot serve as the sole basis for a negative finding. If an opinion cannot be made without resort to speculation, the clinician should so state and provide reasoning as to why this is so. 

 

 

D. Martz Ames

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Ryan Frank, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.